UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GTS SECURITIES, LLC, )<br>)<br>Plaintiff, )<br>) No. 25 C 3361<br>v. )<br>) Judge Sara L. Ellis<br>CBOE EXCHANGE, INC. and CBOE EDGX )<br>EXCHANGE, INC., )<br>)<br>Defendants. ) | |

## OPINION AND ORDER

Plaintiff GTS Securities, LLC ("GTS"), an SEC-registered broker-dealer, filed this lawsuit against Defendants Cboe Exchange, Inc. ("Cboe Options") and Cboe EDGX Exchange, Inc. ("EDGX," and, collectively with Cboe Options, the "Cboe Exchanges") in state court. GTS, a member of the Cboe Exchanges, claims that the Cboe Exchanges committed fraud and violated the Illinois Consumer Fraud Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*, by falsely representing to GTS that GTS could transfer its designated primary market maker ("DPM") appointments on the Cboe Exchanges to other firms for consideration by way of an endorsement process that the Cboe Exchanges suggested to GTS. The Cboe Exchanges removed the case to this Court, contending that the Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa because GTS' claims arise under federal securities laws. GTS has filed a motion to remand.[1] Because GTS' claims do not give rise to federal jurisdiction, the Court grants GTS' motion and remands this case to state court.

---

[1] The Cboe Exchanges filed a motion for leave to file a surreply, to which GTS filed an opposition. While the Court does not necessarily agree that GTS' reply warranted a surreply, in the interest of completeness, the Court has considered the arguments made by the Cboe Exchanges in the surreply and so grants the motion for leave to file the surreply.

**BACKGROUND**

Cboe Options and EDGX are self-regulatory organizations ("SROs") as defined by 15 U.S.C. § 78c(a)(26), with the SEC having delegated certain regulatory duties to them. Cboe Options operates the largest options exchange in the United States, while EDGX operates an all-electronic options exchange. Both are subsidiaries of Cboe Global Markets, Inc. ("Cboe Global").

GTS, an SEC-registered broker-dealer, trades over 30,000 different financial instruments globally. It became a member and trading permit holder ("TPH") of Cboe Options in November 2019 and of EDGX in February 2020. From March 2020 to September 2023, GTS also operated as a DPM for the Cboe Exchanges. A DPM is a TPH organization approved by the Cboe Exchanges to "function in allocated securities as a Market-Maker on the trading floor." Doc. 1-1 ¶ 14. GTS became a DPM for the Cboe Exchanges by acquiring Barclays Capital Inc.'s ("Barclays") DPM business. After the acquisition, Cboe Options reallocated Barclays' DPM appointments to GTS pursuant to Cboe Options Rule 3.53, which provides a procedure for the transfer of DPM appointments in the event of "(i) any sale, transfer, or assignment of any significant share of the ownership of a DPM; (ii) any change or transfer of control of a DPM; or (iii) any merger, sale of assets, or other business combination or reorganization of a DPM." *Id.* ¶ 16. The Cboe Exchanges have also issued Exchange Bulletins indicating that they allow DPM appointment transfers for consideration, even without an ownership structure change as set forth in Rule 3.53.

As a DPM, GTS generated consistent profits and also paid the Cboe Exchanges over $30 million in fees. But in July 2023, Cboe Global's Director for Derivatives Account Coverage, David Creagan, reached out to GTS employees Kirill Gelman and Eric Levine, who operated

2

GTS' DPM business, to inform them that GTS' quote performance fell below newly established criteria for nine symbols. Creagan gave GTS the option to improve its quote performance by the third week of August to keep the DPM appointment or to voluntarily give up its DPM assignment. Levine responded requesting a discussion, also stating that he "assume[d] in lieu of voluntarily giving up [GTS'] assignments, [GTS] can transfer to another DPM for a consideration (that's how we got most of the book in the first place years ago)." *Id.* ¶ 22. Creagan replied negatively to this statement, which surprised GTS given the Cboe Exchanges' past historic practices and assurances. GTS then obtained an additional month to decide what to do with its DPM positions. On August 9, Gelman, Levine, and GTS General Counsel Richard Grant participated in a virtual meeting with employees of the Cboe Exchanges, including legal counsel. The Cboe Exchanges' representatives did not dispute that the Cboe Exchanges had a historic practice of allowing firms to transfer DPM appointments for consideration and indicated that their rules, and specifically Cboe Options Rule 3.53(h), did not govern the transfer of DPM appointments under the present circumstances, meaning that the proposed transfer did not fall under the purview of the Cboe Exchanges' regulatory and legal procedures. Based on these representations, GTS indicated it would proceed with a transfer and coordinate with the Cboe Exchanges' commercial staff to effectuate it.

  GTS then began soliciting bids from firms to transfer its DPM appointments to them for consideration, keeping the Cboe Exchanges informed about the process. The Cboe Exchanges never indicated any reservations with the proposed transfer and instead led GTS to believe that it would facilitate the transfer as a commercial arrangement outside of the purview of their regulatory and legal procedures. To effectuate the transfer, the Cboe Exchanges indicated that

GTS would have to resign its DPM appointments and simultaneously endorse the transfer to the other firm in a communication to the Cboe Exchanges.

GTS reached an agreement with Firm A to endorse the reallocation of its Cboe Options DPM assignments to Firm A, at which time Firm A would pay GTS cash consideration. It also reached an agreement with Firm B to endorse the reallocation of its EDGX DPM assignments to Firm B, at which time Firm B would pay GTS cash consideration. GTS informed the Cboe Exchanges of these agreements and received acknowledgment of the arrangements. At no time did anyone at the Cboe Exchanges indicate that they would prevent the transfer of the DPM assignments to Firm A and Firm B.

On September 22, Creagan wrote to GTS to indicate that the reallocation process would begin on September 25. On September 26, Creagan wrote to GTS indicating that the solicitation process had begun for the first fifty names on Cboe Options and all EDGX names, which would be allocated that day for trading the next. GTS' Levine responded by asking why the Cboe Exchanges did not reallocate all of GTS' symbols to Firm A and Firm B at once. Creagan attributed this to a technological issue. But instead of reallocating the symbols to Firm A and Firm B as agreed, however, the Cboe Exchanges reallocated the symbols to various different firms, meaning that Firm A and Firm B had no obligation to pay GTS the agreed-upon cash consideration.

## LEGAL STANDARD

A defendant may remove a case filed in state court that the plaintiff could have originally filed in federal court. 28 U.S.C. § 1441; *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000). The removing party bears the burden of demonstrating the propriety of removal, with the Court resolving any doubt regarding jurisdiction in favor of remand. *Schur v. L.A. Weight Loss*

*Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). The Court may remand a case for lack of subject matter jurisdiction or, if timely raised, for failure to comply with the removal statutes. 28 U.S.C. §§ 1446, 1447(c); *GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 625–26 (7th Cir. 2013).

## ANALYSIS

### I. Federal Jurisdiction

The Cboe Exchanges removed this case to federal court based on their contention that cases that raise questions as to whether an SRO complied with, or acted outside the scope of, rules promulgated pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78 *et seq.*, arise under federal law. Alternatively, the Cboe Exchanges contend that the Court has jurisdiction because federal law completely preempts GTS' state law claims. GTS argues, however, that this case does not present a federal question and that complete preemption does not apply. GTS alleges that the case "does not involve [the Cboe Exchanges'] exercise of any delegated regulatory duties" as the Cboe Exchanges "admitted that the circumstances presented by this case fall outside the scope of [the Cboe Exchanges'] SEC-approved rules and delegated regulatory purview." Doc. 1-1 ¶ 2. The Court first considers whether GTS' claims arise under federal law and then addresses the complete preemption argument.

#### A. Arising Under Jurisdiction

The parties agree that this case does not involve a federal claim. But federal question jurisdiction also exists over a "'special and small category' of cases" involving state law claims that implicate significant issues of federal law. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). The existence of a federal issue is not "a password opening federal courts to any state action embracing a point of federal law," however. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g*

5

*& Mfg.*, 545 U.S. 308, 314 (2005). In order for federal jurisdiction to lie, a state law claim must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."[2] *Id.*

The Court does not find that this case meets this test. GTS' claims relate to what representations the Cboe Exchanges made to it about the transfer of its DPM interests. While the claims may peripherally touch on the Cboe Exchanges' rules, a glancing touch is an insufficient hook to bring this case into federal court. *See Webb*, 889 F.3d at 860 (fact that FINRA's "duties under the federal securities laws might come up" did "not make federal law the 'cornerstone' of the plaintiff's complaint" (citation omitted)); *Panther Brands, LLC v. Indy Racing League, LLC*, 827 F.3d 586, 589 (7th Cir. 2016) ("The fact that federal regulations . . . may have some bearing on the case tells us nothing about jurisdiction; the question remains whether the claim is based on state or federal law."); *Roberts v. Smith & Wesson Brands, Inc.*, No. 22-CV-6169, 2023 WL 6213654, at *18 (N.D. Ill. Sept. 25, 2023) ("[T]he mere possibility of addressing federal law is not enough to blaze a path to the federal courthouse."), *aff'd*, 98 F.4th 810 (7th Cir. 2024). Instead, it must be "impossible" to decide the state law claim without deciding the federal issue. *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014); *see also Illinois ex rel. Elder v. U.S. Bank N.A.*, No. 21 C 926, 2021 WL 4942041, at *3 (N.D. Ill. Oct. 22, 2021) ("Federal law must be dispositive of the case to give rise to federal jurisdiction.").

---

[2] As the Cboe Exchanges acknowledge in their response to the motion to remand, the *Grable* test applies to determine the reach of the Exchange Act's jurisdictional grant. *See Merrill Lynch, Pierce, Fenner & Smith v. Manning*, 578 U.S. 374, 377 (2016). Therefore, the Court does not separately address the jurisdictional reach of § 1331 and the Exchange Act and instead considers them together. *See Webb v. Fin. Indus. Regul. Auth., Inc.*, 889 F.3d 853, 860 n.6 (7th Cir. 2018).

The Cboe Exchanges argue that GTS premises its claims on allegations that the Cboe Exchanges violated their rules and acted outside the scope of those rules, which necessarily involves a federal issue. For support, they mainly rely on the reasoning in *Citadel Securities LLC v. Chicago Board Options Exchange, Inc.*, in which the plaintiffs alleged that SROs violated SEC rules with which they had to comply. No. 16 C 9747, 2017 WL 118419, at *4 (N.D. Ill. Jan. 12, 2017) ("Plaintiffs[ ] attempt to . . . characterize[e] their case as simply needing to 'prove that the [defendants] took money from them to which [defendants] were not entitled.' But, to show that defendants were not entitled to the fees, plaintiffs must show that defendants violated their own rules. Absent such a violation, defendants were entitled to assess and keep the fees. Thus, plaintiffs' claims necessarily implicate a federal issue." (third and fourth alterations in original)). But unlike in *Citadel*, here, GTS alleges that the Cboe Exchanges' rules do not play a role in the fraud at issue and that its claims could survive regardless of the Cboe Exchanges' compliance with their rules. In other words, GTS' claims do not "necessarily depend[ ] on a showing that the defendant breached the Exchange Act" so as to arise under federal law. *Manning*, 578 U.S. at 383; *see Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1042 (9th Cir. 2003) ("[B]ecause Lippitt challenges conduct solely under state law—irrespective of whether it is legal under SRO rules—his claims do not fit under" the Exchange Act). And although the Cboe Exchanges may defend against GTS' claims by pointing to their rules, a federal defense cannot transform this case into a federal one. *See Chi. Trib. Co. v. Bd. of Trs.*, 680 F.3d 1001, 1003 (7th Cir. 2012) ("*Grable* does not alter the rule that a potential federal defense is not enough to create federal jurisdiction under § 1331."); *Schumacher v. Sterigenics U.S., LLC*, 394 F. Supp. 3d 837, 844 (N.D. Ill. 2019) ("Although Defendants may ultimately choose to defend against Plaintiffs' claims by introducing evidence that they complied with

7

federal law, it is well settled that this would not be a basis for the exercise of federal jurisdiction.").

Moreover, any federal issue in this case does not qualify as substantial, i.e. "significant to the federal system as a whole." *Gunn*, 568 U.S. at 264. GTS contends that the Cboe Exchanges committed fraud by misleading it into believing that it could transfer its DPM appointments for compensation. It maintains that the Cboe Exchanges represented that the circumstances presented by GTS' request fell outside the scope of their rules, seemingly taking no stance on whether the rules should have addressed the issue or whether the contemplated transfer violated the Cboe Exchanges' rules. In other words, GTS focuses on whether the Cboe Exchanges made the alleged misrepresentations, which does not depend on a determination about the contemplated transaction's compliance with the Cboe Exchanges' rules or any other SEC-mandated rules. Resolution of GTS' claims, therefore, is "fact-bound and situation-specific" and does not involve pure issues of law that could control future cases, meaning that the case cannot be "squeezed into the slim category *Grable* exemplifies." *Empire Healthchoice*, 547 U.S. at 700–01; *see also Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 910 (7th Cir. 2007) ("We have a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law.").

In summary, because the case does not necessarily involve a substantial federal issue, the Court cannot find that this case arises under federal law.

**B.     Complete Preemption**

Alternatively, the Cboe Exchanges argue that federal law completely preempts GTS' claims. Complete preemption focuses "on federal occupation of a field," and occurs "when federal law creates an 'exclusive cause of action' and 'set[s] forth procedures and remedies

8

governing that cause of action,' such that it 'wholly displaces the state-law cause of action.'" *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022). Courts across the country have recognized that the Exchange Act does not completely preempt state claims raising securities law issues. *See, e.g.*, *Manning*, 578 U.S. at 391 ("Congress likely contemplated that some complaints intermingling state and federal questions would be brought in state court: After all, Congress specifically affirmed the capacity of such courts to hear state-law securities actions, which predictably raise issues coinciding, overlapping, or intersecting with those under the [Exchange] Act itself."); *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 383 (1996) ("Congress plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions."); *Dennis v. Hart*, 724 F.3d 1249, 1254 (9th Cir. 2013) ("[T]he Exchange Act does not so fully displace state law as to invoke complete preemption."); *Kenosha Unified Sch. Dist. v. Stifel Nicolaus & Co.*, 607 F. Supp. 2d 967, 978 (E.D. Wis. 2009) (collecting cases).

Instead of attempting to convince the Court to diverge from this authority, the Cboe Exchanges seemingly seek to invoke conflict preemption as the basis for federal jurisdiction. *See* Doc. 15 at 17 ("There is a wall of precedent holding that state law claims are preempted when those claims either conflict with the Exchange Act or are an obstacle to Congressional intent that the SEC regulate issues related to exchange compliance with the Exchange Act."); *see also Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 152–55 (2d Cir. 2016) (dismissing breach of contract claim based on conflict preemption); *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1132 (9th Cir. 2005) ("SRO rules that have been approved by the Commission . . . preempt state law when the two are in conflict[.]"). Conflict preemption occurs when "it would be 'impossible' for [the defendant] to comply with both state and federal law" or "state law (as

9

[the plaintiff] seeks to apply it) constitutes an 'obstacle' to satisfying the purposes and objectives of Congress." *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 650 (7th Cir. 2019). Regardless of the merits of conflict preemption to GTS' claims, conflict preemption cannot serve as a basis for removal jurisdiction. *See Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 601 (7th Cir. 2008) ("Conflict preemption, unlike complete preemption, actually is a true preemption doctrine and is an issue left to the state court in this case, since conflict preemption does not provide an independent basis for federal jurisdiction/removal."); *In re Repository Techs., Inc.*, 601 F.3d 710, 723 (7th Cir. 2010) ("[A] 'conflict preemption' argument, however, is merely a federal defense that the defendants may present to the state courts in favor of dismissal. Absent complete preemption, a defense that relies on 'the pre-emptive effect of a federal statute' does not provide a basis for removal." (citations omitted)). Therefore, the Cboe Exchanges have not identified a valid basis for federal jurisdiction over this case, requiring the Court to remand the case to state court.

## II.     Request for Fees and Costs

Given that the Court finds no basis to exercise federal jurisdiction over GTS' claims, the Court must also consider GTS' request for an award of fees and costs pursuant to 28 U.S.C. § 1447(c). Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Court may award attorneys' fees "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The Court should award fees "if, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal," but "if clearly established law did not foreclose a defendant's basis for removal," the Court should decline to

award fees. *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007). While the Court has found against the Cboe Exchanges, the Court cannot find that they advanced an objectively unreasonable position when they removed the case to federal court. Although the Court finds *Citadel* distinguishable, the Cboe Exchanges made a good faith argument as to its application to this case and the validity of its reasoning even post-*Manning*. Moreover, the Court does not find that the Cboe Exchanges failed to properly investigate the basis for removal by failing to cite *Grable* or *Manning* in their notice of removal or by recycling some of the same language from the notice of removal in the *Citadel* case. Therefore, the Court declines to award GTS its fees and costs in pursuing remand.

## CONCLUSION

For the foregoing reasons, the Court grants GTS' motion to remand [14]. The Court grants the Cboe Exchanges' motion for leave to file a surreply [17]. The Court remands this case to the Circuit Court of Cook County, Illinois.

Dated: August 14, 2025

SARA L. ELLIS
United States District Judge